**ALLEGHENY COUNTY DEPUTY SHERIFFS' ASSOCIATION,**
Petitioner

v.

**PENNSYLVANIA LABOR RELATIONS BOARD,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2009.

Decided Jan. 28, 2010.

Joshua M. Bloom and Tiffany R. Waskowicz, Pittsburgh, for petitioner.

Samuel B. Ickes and Peter Lassi, Harrisburg, for respondent.

BEFORE: SIMPSON, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this labor relations appeal, the Allegheny County Deputy Sheriffs' Association

(Association) seeks review of the Pennsylvania Labor Relations Board's (Board) 2009 determination that the deputy sheriffs of Allegheny County (Deputies), are not "police officers" for purposes of collective bargaining under "Act 111."[1] The Association contends Deputies are entitled to Act 111 coverage because they are now vested with full police powers by virtue of their inclusion in the definitions of "police officer" in the Crimes Code[2] and the Municipal Police Education and Training Law (MPETL),[3] and because they primarily act as police. Allegheny County (County) intervenes in this appeal. Upon review, we affirm.

## I. Background

Deputies' joint employers are the County and the County Sheriff (Sheriff). Presently, the Association is certified by the Board under the Public Employe Relations Act (PERA)[4] as the exclusive representative of Deputies' collective bargaining unit. Currently, the County employs over 150 deputy sheriffs, including a chief deputy, two commanders, three lieutenants and ten sergeants. Pursuant to Section 805 of PERA (guards and court personnel), Deputies are classified as employees *"directly involved with and necessary to the functioning of the courts of this Commonwealth ...."* 43 P.S. § 1101.805 (emphasis added).

## A. Prior Court Decisions

On two prior occasions, Deputies sought to reclassify themselves as Act 111 police officers. On both occasions, this Court ultimately rejected their claim to Act 111 status.[5] In *Venneri v. County of Allegheny*, 12 Pa.Cmwlth. 517, 316 A.2d 120 (1974) (*Venneri II* ), we reviewed the history of Act 111 and noted that "[n]owhere in the Act is the term 'policemen' specifically defined, nor is there any reference whatsoever to 'deputy sheriffs.' " *Id.* at 123. We further noted that "[PERA], by its terms, obviously was intended to cover all other public employes within the Commonwealth." *Id.* In particular, Section 805 of PERA applies to court-related personnel. 43 P.S. § 1101.805. Although Deputies' duties included activities normally performed by police officers, their *primary duties* were directly related to the operation of the County courts. Moreover, we recognized in *Venneri II* that neither the Second Class County Code[6] nor any other act of the Legislature vests Deputies with general police powers and authority. "When the Legislature has chosen to vest a given group with [police] powers and duties, it has done so with a fair degree of specificity." *Id.* at 125. We therefore held Deputies were not police officers within the intent of Act 111.

---

1. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10 (Policemen and Firemen Collective Bargaining Act).

2. *See* 18 Pa.C.S. § 103.

3. *See* 53 Pa.C.S. § 2162.

4. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

5. Section 1 of Act 111, 43 P.S. § 217.1, provides:
 Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

6. Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §§ 3101–6302.

A decade later, in *Allegheny County Deputy Sheriffs' Association v. Pennsylvania Labor Relations Board*, 95 Pa.Cmwlth. 132, 504 A.2d 437 (1986) (*ACDSA I*), we again held Deputies were essentially court-related personnel covered by PERA and not "police officers" within the meaning of Act 111. We noted that although Deputies continue to perform police-type functions, including undercover work with a drug enforcement task force and a related homicide investigative unit, no substantial change in their duties occurred since *Venneri II*. Deputies' *primary duties* remained directly related to operation of the County courts.

In *ACDSA I*, we also rejected the Association's alternative argument that subsequent to *Venneri II* the Legislature, by enacting certain provisions of the Deputies Sheriffs Act[7] (located within the Second Class County Code), granted Deputies' general police powers. In particular, the Association cited Section 10(a) of the Deputy Sheriffs Act, 16 P.S. § 4221.10(a), which provides in part that "[n]o deputy sheriff covered by this act shall be reduced in rank, suspended, furloughed or discharged, except for the following reasons: ... conduct unbecoming a police officer...." We noted neither Section 10(a) nor any other provision of the Deputy Sheriffs Act specifically vests Deputies with general police powers. *ACDSA I.*

 Ultimately, the Board and the courts began applying a conjunctive, two-part test for determining whether employees are police officers or firefighters for purposes of collective bargaining under Act 111. *See County of Lebanon v. Pa. Labor Relations Bd.*, 873 A.2d 859 (Pa. Cmwlth.2005); *Narcotics Agents Reg'l Comm. v. Pa. Labor Relations Bd.*, 833

A.2d 314 (Pa.Cmwlth.2003); *Cambria County Deputy Sheriffs Ass'n v. Pa. Labor Relations Bd.*, 799 A.2d 957 (Pa.Cmwlth. 2002); *Delaware County Lodge No. 27, Fraternal Order of Police v. Pa. Labor Relations Bd.*, 690 A.2d 754 (Pa.Cmwlth. 1997); *Commonwealth v. Pa. Labor Relations Bd.*, 125 Pa.Cmwlth. 549, 558 A.2d 581 (1989) (*Park Rangers*). The test for determining whether employees are police officers under Act 111 requires that the particular employees: "(1) be legislatively authorized to act as police; and (2) effectively act as police." *Narcotics Agents*, 833 A.2d at 317 (citing *Cambria County Deputy Sheriffs Ass'n*; *Delaware County Lodge No. 27*).

## B. Current Petition for Representation

In May, 2008, the Association again petitioned the Board for certification to represent Deputies as police officers under Act 111. Noting Act 111 does not define who are covered as "police officers," the Association asserted the Legislature's 1995 amendment to the Crimes Code, and the new version of the MPETL, enacted in 1996, expressly and unambiguously define deputy sheriffs in a second class county as "police officers," thereby vesting Deputies with full police powers. Section 103 of the Crimes Code, 18 Pa.C.S. § 103, defines "police officer" as follows:

> The term shall include the sheriff of a county of the second class and deputy sheriffs of a county of the second class who have successfully completed the requirements under [the MPETL].

Moreover, the MPETL defines "police officer" as "[a]ny one of the following ... (2)[a] deputy sheriff of a county of the

---

**7.** Act of May 31, 1974, P.L. 296, *as amended*, 16 P.S. §§ 4221.1–4221.16, repealed insofar as it is inconsistent with Section 9 of the Act of January 27, 1998, P.L. 1. The Deputy Sheriffs Act extends civil service protections to deputy sheriffs in a second class county.

second class." 53 Pa.C.S. § 2162. In addition, the MPETL defines "police department" in part as

(1) A public agency of a political subdivision having general police powers and charged with making arrests in connection with the enforcement of the criminal or traffic laws. This paragraph includes the sheriff's office in a county of the second class.

*Id.* Because deputy sheriffs in a second class county are now vested with full police powers by virtue of 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162, the Association's petition alleged the Board is bound by the principles of statutory construction to find that the Legislature intends Deputies to be covered by Act 111. The Association further alleged that although Deputies retain their duties with the courts, they perform the full duties of police officers. All Deputies are required to obtain and maintain police officer certification under the MPETL. Deputies are the primary police who protect the courts and court buildings; they are no different from other police officers who perform necessary administrative duties along with criminal investigations and arrests. Therefore, Deputies primarily act as police.

### C. Hearing and Proposed Order of Dismissal

In July, 2008, Board Hearing Examiner Donald A. Wallace (Hearing Examiner) held an evidentiary hearing on the Association's petition for representation. The Association presented testimony from three witnesses and submitted five exhibits regarding Deputies' training, certification and job duties. The County submitted no evidence.

In September, 2008, Hearing Examiner issued a proposed order of dismissal (proposed order) making the following findings:

1. The Board has certified the Association under [PERA] as the exclusive representative of a bargaining unit that includes deputy sheriffs employed by the County and the Sheriff.

2. The primary duties of the deputy sheriffs are directly related to the operation of the courts in the County. They include providing security for the courts, serving process for the courts, executing warrants for the courts and transporting prisoners for the courts.

3. The deputy sheriffs are required by the Sheriff to attend training provided [under the MPETL], are identified by [the MPETL] as police officers, carry firearms outside the court house, are expected by the Sheriff to exercise their arrest powers, have made arrests for crimes committed in their presence, have shared intelligence and participated on task forces with the County's District Attorney, the Drug Enforcement Administration and the Federal Bureau of Investigation and have backed up and substituted for municipal police officers.

Hr'g Examiner's Proposed Order, 09/17/08, at 1 (citations omitted).

Hearing Examiner rejected the Association's argument that the Legislature's inclusion of deputy sheriffs of a second class county in the definitions of "police officer" in 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 now vests Deputies with general police powers. Hearing Examiner noted these provisions "are noticeably silent as to any powers the Legislature may have thereby conferred on [Deputies]." Proposed Order at 4. In contrast, Hearing Examiner cited *Hartshorn v. County of Allegheny*, 460 Pa. 560, 333 A.2d 914 (1975), where the Supreme Court recognized that Section

1440(b) of the Second Class County Code[8] clearly vested County *detectives* with general police powers.

Further, despite the fact Deputies are trained as police officers and perform some police work, Hearing Examiner found Deputies' *primary duties are directly related to the operation of the County's courts.* Proposed Order at 2. Deputies are assigned daily to all divisions of the common pleas court. Many of their duties are dangerous; they escort prisoners, keep order, protect judges, provide courthouse security, carry out orders and warrants, enforce injunctions, and perform other duties assigned by the court.

Thus, Hearing Examiner determined Deputies failed to meet either prong of the Act 111 "police officer" test. First, the Legislature did not specifically vest Deputies with police powers. Moreover, because Deputies' *primary duties* are directly related to the operations of the courts, they do not primarily or effectively act as police. *ACDSA I; Venneri II.* Therefore, Hearing Examiner concluded Deputies were not Act 111 police officers and dismissed the Association's petition.

## D. Exceptions

The Association filed exceptions alleging Hearing Examiner failed to consider numerous facts demonstrating Deputies have the constant duty to act as police officers. The Association listed 56 factual allegations that Hearing Examiner failed to con-

sider in determining whether Deputies are primarily Act 111 police officers rather than court personnel.

The Association also asserted Hearing Examiner committed several errors of law. It argued the law changed substantially since *Venneri II* and *ACDSA I.* Now, 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 define deputy sheriffs of a second class county as police officers. Therefore, Deputies are now legislatively authorized to act as police and perform a broad range of police functions. The Association thus argued Hearing Examiner, in not finding Deputies are Act 111 police officers, failed to follow the principles of statutory construction applied by the Supreme Court in *Hartshorn,* which held that County *detectives* are Act 111 police officers.

## E. Final Order

In April, 2009, the Board entered a final order dismissing the Association's exceptions and making the proposed order absolute. In its order, the Board made additional, more specific, findings regarding Deputies' duties. The County employs over 150 Deputies. Finding of Fact (F.F.) No. 4. Most Deputies work the daylight shift. *Id.* The primary duty of approximately 70–75 Deputies is to provide courtroom security for common pleas judges and district magistrates. F.F. No. 5. The primary responsibility for approximately 24–26 Deputies is to transport prisoners to court proceedings. Seven Deputies are assigned to hospital duty; their primary

---

**8.** Section 1440(b) of the Second Class County Code, 16 P.S. § 4440(b), provides, with emphasis added:

(b) County detectives shall at all times be subject to the orders of the district attorney, and shall investigate and make report to the district attorney as to the conduct in office of magistrates, constables, deputy constables and other officers connected with the administration of criminal justice, to make investigations, and endeavor to obtain such

evidence as may be required by the district attorney in any criminal case, and perform such other duties as the district attorney may direct. *Said detectives shall be general police officers and shall have all powers now conferred on constables by existing laws of this Commonwealth, so far as they relate to crime or criminal procedure, and they shall serve subpoenas in cases in which the Commonwealth is a party in a court of record.*

responsibility is to remain with hospitalized prisoners at all times. F.F. No. 7. Twelve Deputies serve writs and other process issued by the common pleas court during daylight hours. F.F. No. 8. Two Deputies serve housing warrants on the evening shift at the request of the common pleas courts. F.F. No. 9.

Approximately 16 Deputies work in the investigation unit of the Sheriff's office. F.F. No. 10. They are assigned arrest warrants for persons failing to appear at court proceedings or those never apprehended. *Id.* They attempt to locate these persons and take them into custody. *Id.* Nearly all the *investigative work* performed is directed at apprehending fugitives already subject to the jurisdiction of the courts. F.F. No. 11.

At times, local and federal law enforcement agencies seek Deputies' assistance because of their expertise in apprehending and arresting fugitives. F.F. No. 12. At the time of the hearing, approximately six to eight Deputies were assigned to task forces established by the County District Attorney, the Federal Bureau of Investigation and the Drug Enforcement Agency. F.F. No. 13.

There are 117 police departments in the County, including the City of Pittsburgh Police, the County Police and local police departments. F.F. No. 14. There are no communities in the County where Deputies provide primary police protection. *Id.* The City of Pittsburgh employs its own detectives to investigate crimes occurring within the City. F.F. No. 15. Some local communities in the County also employ their own detectives. *Id.* Some smaller communities seek assistance primarily from County detectives in investigating crimes. *Id.* The County District Attorney also employs detectives who investigate crimes. *Id.*

There are no areas in the County where Deputies regularly perform patrol duties. F.F. No. 16. The vast majority of Deputies' arrests are made pursuant to court-issued warrants. F.F. No. 17. From July 2007 to July 2008, nearly 90% of Deputies' arrests were based on warrants issued by the courts. *Id.*

In reviewing the Association's exceptions, the Board did not determine whether Deputies are legislatively authorized by 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 to act as police. Rather, the Board cited *dicta* in *Kopko v. Miller,* 586 Pa. 170, 192, 892 A.2d 766, 779 (2006) (*Kopko II*), suggesting that the Supreme Court may construe 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 as authorizing sheriffs and deputy sheriffs in a second class county to exercise full police powers upon meeting the MPETL's training requirements. *See id.* at 192, 892 A.2d at 779.[9]

■ Even assuming *Kopko II* indicates Deputies are legislatively authorized to act as police once they are certified as police officers under the MPETL, the Board noted this would only meet the first part of the Act 111 test. An issue remains as to whether Deputies "effectively act as po-

---

9. Nonetheless, the Board recognized *Kopko v. Miller,* 586 Pa. 170, 192, 892 A.2d 766, 779 (2006) (*Kopko II*), involved a different issue: whether sheriffs and deputy sheriffs in Warren, Mercer, Bradford and Cumberland Counties are investigative or law enforcement officers under the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701–81, and thus entitled to training under that statute. The Board also noted *Kopko II* did not involve a sheriff's office in a second class county.

The Association does not cite *Kopko II* in support of its position. We also note that in a unanimous *en banc* decision, *Kopko v. Miller,* 842 A.2d 1028 (Pa.Cmwlth.2004) (*Kopko I*), *aff'd, Kopko II,* this Court held that modern sheriffs in Pennsylvania are primarily charged with court-related functions.

lice." Although Deputies perform some police work, their *primary duties continue to be directly related to the operation of the County courts. ACDSA I; Venneri II.* Consequently, the Board concluded the Association failed to prove Deputies *effectively act as police.* Because the Association did not meet the second prong of the test for Act 111 police officers, the Board dismissed the Association's exceptions and made the proposed order of dismissal absolute and final. The Association petitions for review.[10]

## II. Issues

The Association presents the following issues for review. It contends the Board, in determining Deputies are not police officers within the meaning of Act 111 even though the definitions of "police officer" in 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 vest Deputies with full police powers, erred in failing to abide by the principles of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. For this reason, the Association contends the Board's decision is inconsistent with the Supreme Court's decision in *Hartshorn,* which held County *detectives* are legislatively authorized to act as police officers and thus entitled to Act 111 collective bargaining rights.

In a related argument, the Association contends the Board disregarded substantial changes in the law since *Venneri II* and *ACDSA I,* namely, that the Legislature, by including deputy sheriffs in a second class county in the definitions of "police officer" in 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162, now vests Deputies with full police powers. Because Deputies are vested with full police powers, the Board's decision is inconsistent with the Supreme

Court's decision in *Commonwealth v. Pennsylvania Labor Relations Board,* 502 Pa. 7, 463 A.2d 409 (1983) (*Capitol Police* ), which held the Capitol Police are legislatively vested with Act 111 police powers, and this Court's decision in *Park Rangers,* which held that state park officers are legislatively vested with Act 111 police powers.

Also, the Association argues the Board erred or abused its discretion by disregarding substantial evidence demonstrating Deputies effectively act as police. It asserts the Board erred in concluding Deputies do not perform any additional police functions since *Venneri II* and *ACDSA I* and that Deputies infrequently exercise police power because of their court-related duties. The Association also argues Deputies perform more police functions than the officers in *Capitol Police* and *Park Rangers.*

## III. Discussion

### A. Statutory Construction Act; *Hartshorn; Capitol Police; Park Rangers*

#### 1. Arguments

The Association first asserts the Board, by determining Deputies are not Act 111 police officers despite their inclusion in the definitions of "police officer" in 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162, either overlooked or misapplied the following principles of the Statutory Construction Act. First, "[w]ords and phrases shall be construed ... according to their common and approved usage." 1 Pa.C.S. § 1903(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is

10. Our review is limited to determining whether the Board's necessary findings of fact were supported by substantial evidence and whether the Board committed any errors of law or constitutional violations. *Cambria County Deputy Sheriffs Ass'n v. Pa. Labor Relations Bd.,* 799 A.2d 957 (Pa.Cmwlth.2002).

not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

In addition, Act 111 must be liberally construed to effect its objective. 1 Pa.C.S. § 1928(c). Moreover, statutes relating to the same persons or things, or to the same class of persons or things, shall be construed together. 1 Pa.C.S. § 1932. Further, if a statute clearly defines words used in that statute, those definitions are binding. *Pa. Associated Builders & Contractors, Inc. v. Dep't of Gen. Servs.*, 593 Pa. 580, 932 A.2d 1271 (2007).

Here, the Association asserts 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 clearly define Deputies as police officers. What is more, neither 18 Pa.C.S. § 103 nor 53 Pa.C.S. § 2162 limit or state any exceptions to situations in which Deputies are not considered police officers.

Applying the above-cited principles of statutory construction, the Association reasons Deputies are police officers by virtue of 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162; police officers are entitled to Act 111 protections; and therefore, Deputies are entitled to Act 111 protections.

The Association further asserts the Board's decision is inconsistent with *Hartshorn*, where the Supreme Court determined County *detectives* are entitled to Act 111 bargaining status because they are defined as police officers by Section 1440(b) of the Second Class County Code. Here, the Association argues, the Legislature, via 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162, has similarly vested Deputies, as general police officers, with the authority and obligation to enforce all criminal laws. Therefore, by disregarding the Legisla-

ture's act of defining Deputies as police officers, the Board contravenes the Supreme Court's decision in *Hartshorn*.

For the same reason, the Association argues the Board disregarded or misapplied the Supreme Court's decision in *Capitol Police* and this Court's decision in *Park Rangers*. In *Capitol Police*, the Supreme Court determined that although the Capitol Police typically perform some duties within the realm of a security guard, they are entitled to Act 111 coverage because they are legislatively authorized to act as general police officers. Similarly, in *Park Rangers*, this Court recognized that the Legislature vested state park officers with a broad grant of police powers, thereby entitling them to Act 111 bargaining status. Here, the Association argues 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 vest Deputies with full police powers.

Both the Board and County disagree. Although the Board, in its final order, did not find it necessary to decide whether Deputies are "legislatively authorized to act as police," it argues here that the definitions of "police officer" in 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 do not vest Deputies with full police powers. These definitions of "police officer" do not grant Deputies specific authorization to enforce any laws at all, let alone enforce all the laws of the Commonwealth, as is required to meet the first prong. *See Delaware County Lodge No. 27* (Act 111 police must be statutorily authorized to enforce all the laws of the Commonwealth; Delaware County park police were only authorized to enforce rules and regulations established by county commissioners).[11]

---

11. Further, the Board maintains, even where the Legislature specifically authorizes some police powers, limitations on that power suggest employees cannot bargain as Act 111 police officers. *County of Lebanon v. Pa. La-* *bor Relations Bd.*, 873 A.2d 859 (Pa.Cmwlth. 2005) (county hazardous materials team were not firefighters within meaning of Act 111 because they had no broad or general authority to act as firefighters); *Narcotics Agents*

Intervenor County similarly argues Deputies are not legislatively authorized by 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 to act as police officers. The Crimes Code and the MPETL define Deputies as police officers for purposes of those statutes only. Section 103 of the Crimes Code merely recognizes Deputies have police officer training under the MPETL. These provisions do not confer general police powers or Act 111 status on Deputies. *See County of Lebanon* (hazardous materials team not entitled to Act 111 "firefighter" status merely because they have training similar to firefighters covered by Act 111).

Nowhere has the Legislature imposed the responsibility of general police enforcement for any geographic area or community on Deputies. In contrast, the County cites this Court's decision in *Allegheny County v. Hartshorn*, 9 Pa.Cmwlth. 132, 304 A.2d 716, 719 (1973), *aff'd*, 460 Pa. 560, 333 A.2d 914 (1975), where we noted "it is clear that county detectives of Allegheny County perform duties normally associated with policemen." Substantially all of County *detectives'* time is spent in the investigation of felonies and serious misdemeanors, and in the apprehension of suspects identified in those investigations. *Id.*[12]

## 2. Analysis

■■ We disagree with the Association's basic premise that the Legislature, by including deputy sheriffs in a second class county in the definitions of "police officer" in 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162, thereby vested Deputies with full police powers. "The legislative grant of powers is of substantial concern in determining status of employees for applicability of Act 111." *Capitol Police*, 502 Pa. at 14, 463 A.2d at 413. "When the Legislature has chosen to vest a given group with [police] powers and duties, it has done so with a fair degree of specificity." *Venneri*

*Reg'l Comm. v. Pa. Labor Relations Bd.*, 833 A.2d 314 (Pa.Cmwlth.2003) (agents in Attorney General's Bureau of Narcotics Investigation were not Act 111 police officers because they had only limited law enforcement powers); *Fraternal Order of Police v. Pa. Labor Relations Bd. (Liquor Control Officers)*, 71 Pa. Cmwlth. 316, 454 A.2d 686, *aff'd per curiam*, 502 Pa. 541, 467 A.2d 323 (1983) (liquor control enforcement officers only empowered to enforce limited area of liquor laws; they could not enforce all Commonwealth laws).

12. The County also argues Deputies, as court personnel covered by Section 805 of PERA, 43 P.S. § 1101.805, could never be given Act 111 police officer status without the express direction of the Legislature. Such a serious redistribution of authority over terms and conditions of Deputies' employment from the courts and Sheriff under Section 805 of PERA to a binding Act 111 process between Deputies' representative and the County Executive, without specific legislative authorization, would violate Article III, Section 31 of the Pennsylvania Constitution (delegation of certain powers prohibited; Legislature may en-

act laws subjecting collective bargaining agreements with police officers and firefighters to binding arbitration). Despite several court decisions holding deputy sheriffs are not police officers, the Legislature has taken no specific steps to move deputy sheriffs from coverage under PERA to coverage under Act 111.

The County also argues deputy sheriffs in a second class county may not be treated differently from deputies in other counties. *DeFazio v. Civil Serv. Comm'n of Allegheny County*, 562 Pa. 431, 756 A.2d 1103 (2000). To do so without a rational basis would violate the equal protection principles of Article III, Section 32(1) of the Pennsylvania Constitution (Legislature shall pass no local or special laws regulating the affairs of counties, cities, townships, wards, borough or school districts).

Because we hold Deputies fail to meet the Act 111 test, that is, they are not expressly authorized by 18 Pa.C.S. § 103, 53 Pa.C.S. § 2162, or any other statute, to perform general police duties in the County, and do not primarily act as police officers because they are court-related personnel, we need not address the County's constitutional arguments.

*II*, 316 A.2d at 125. Here, nothing in 18 Pa.C.S. § 103, 53 Pa.C.S. § 2162, the Second Class County Code, or any other statute, imposes the responsibility of general police enforcement in the County on Deputies. Such authority cannot be assumed or implied. *Venneri II.*

In contrast, Section 1440(b) of the Second Class County Code, expressly provides that Second Class County *detectives "shall be general police officers and shall have all powers now conferred on constables by existing laws of this Commonwealth, so far as they relate to crime or criminal procedure . . . ."* 16 P.S. § 4440(b) (emphasis added). Unlike Section 1440(b), 18 Pa. C.S. § 103 and 53 Pa.C.S. § 2162 do not charge Deputies with police powers similar to those of the County *detectives* in *Hartshorn.* For this reason, Deputies reliance on *Hartshorn* is misplaced.

Further, in *Capitol Police,* the Supreme Court determined that the Capitol Police are legislatively authorized to act as general police officers. Pursuant to Section 2416(e) of the Administrative Code of 1929,[13] 71 P.S. § 646(e), the Capitol Police are authorized:

> [t]o exercise the same powers as may now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, municipalities in Dauphin County where State buildings are located. . . .

"Thus, by subsection (e) of this enabling legislation, the Capitol Police are vested with the same powers exercised by the police in the cities in which the Capitol Police are located." *Capitol Police,* 502 Pa. at 15, 463 A.2d at 413.

Also, in *Park Rangers,* this Court recognized that the Legislature vested state park officers with a broad grant of police powers. Under *former* Section 1906–A–6(7) of the Administrative Code of 1929,[14] the state park officers, appointed by the former Department of Resources, were statutorily authorized:

> (a) [t]o make arrests without warrant for all violations of the law which they may witness and to serve and execute warrants issued by the proper authorities: Provided, however, That in cases of offenses for violations of any other provisions of the Vehicle Code, the power to make arrests without warrant shall be limited to cases where the offense is designated a felony or misdemeanor, or in cases causing or contributing to an accident resulting in injury or death to any person;
>
> *(b) [t]o have all the powers and prerogatives conferred by law upon members of the police force of a cities of the first class;*
>
> (c) [t]o have all the powers and prerogatives conferred by law upon constables of the Commonwealth;
>
> (d) [t]o serve subpoenas issued for any examination, investigation or trial had pursuant to any law of the Commonwealth.

Like *Hartshorn, Capitol Police* and *Park Rangers* are distinguishable from the present case. In *Capitol Police* and *Park Rangers,* the Legislature specifically vested the Capitol Police and state park officers with broad police powers within their

---

**13.** Act of April 29, 1929, P.L. 177, *as amended,* 71 P.S. § 646(e).

**14.** Former Section 1906–A–6(7), *formerly* 71 P.S. § 510–6(7) was repealed by Section 303 of the Conservation and Natural Resources Act (Conservation Act), Act of June 28, 1995, P.L. 89. Section 303(7) of the Conservation Act includes nearly identical language conferring general police powers on state park officers. *See* 71 P.S. § 1340.303(7)(i)-(iv).

respective jurisdictions. As such, their primary duty was police work. Absent similar legislation here, Deputies' general police powers cannot be assumed or implied merely because they receive police officer training and certification under the MPETL. *County of Lebanon; Venneri II.*

What is more, the Legislature is presumed aware of a line of cases denying Deputies' Act 111 claims. Nevertheless, it declines to expressly grant Deputies general police powers or otherwise include them under Act 111 coverage. Consequently, we hold that absent any clear legislation which expressly grants Deputies general police powers in any community, geographic area or jurisdiction, the definitions of "police officer" in 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 are insufficient to vest Deputies with the legislative authority to act primarily as Act 111 police officers rather than court personnel. *ACDSA I; Venneri II.*

## B. Deputies Effectively Act as Police

### 1. Arguments

In its final argument, the Association asserts the Board arbitrarily and capriciously disregarded substantial evidence that Deputies do "effectively act as police officers," thereby satisfying the second prong of the Act 111 test. It contends the County Sheriff's Department presently functions much more like a police department than it did at the time of *Venneri II* (mid–1970s) or *ACDSA I* (mid–1980s).

The Association maintains the record is saturated with examples of ways in which Deputies primarily act as police officers.[15] It further contends, with all due respect to the state park officers and the Capitol Police, that Deputies perform significantly more of the type of police acts this Court found significant in determining whether employees act as Act 111 police officers in either *Park Rangers* or *Capitol Police.*

Conversely, the Board maintains that although Deputies perform some police work, their duties remain primarily related to the operation of the courts. Due to their primary responsibility to the courts, Deputies do not effectively act as police. There are no communities in the County where Deputies provide primary police protection. Also, there are no areas in the County where Deputies regularly perform patrol duties. Rather, Deputies only back up or substitute for municipal police officers.

Intervenor County similarly argues Deputies function exclusively as employees necessary to the functioning of the courts.

---

**15.** The Association asserts Deputies: have the same police powers as City of Pittsburgh Police officers; are expected and required to exercise police powers whenever necessary, whether on or off duty; are the primary police officers of the courts; are the first responders to any criminal complaint made within the courthouse or within yards of the courthouse; are expected to make warrantless arrests; can make arrests for crimes they do not witness and are authorized to complete full criminal investigations; are trained as police officers; are required to maintain MPETL certification; are always required to act as police officers, even while performing court duties or while serving writs; made more than 11,000 arrests from July 2007 to July 2008, of which 1,200 are new arrests in response to criminal investigations; have authority to patrol as police officers; are assigned to criminal task forces where they perform only criminal investigations, such as narcotics and gun buys; have the authority to patrol in any municipality in Allegheny County; are issued firearms and required to carry firearms or have access to them at all times; perform wiretaps on criminal suspects; "ping" cell phones of criminal suspects; perform surveillance; work with canines and blood hounds; use ramrods to break into structures and to enforce warrants; and share intelligence with police agencies, the District Attorney's Office and the U.S. Marshal's Office.

Approximately 80% of Deputies work daylight. About half provide courtroom security. The next largest group (24–26) transports prisoners, *after arrest,* mainly during the day. Deputies transported 50,-000 to 60,000 prisoners in 2007. Four deputies transport prisoners at night from outlying municipalities. All transfers are made pursuant to court order. An entire corps of deputies serves papers and process. Deputies served 55,000 writs in 2007.

Summarizing, the County maintains Deputies primary duties and responsibilities remain the same as they were for decades. Moreover, their duties are typical of sheriff's deputies throughout the Commonwealth. Although Deputies are required by the Sheriff to be certified as police officers under the MPETL, most sheriff's deputies in the Commonwealth have similar training.

### 2. Analysis

■ Substantial evidence supports the Board's findings that Deputies' *primary duties* remain court-related. Deputies provide courtroom security, transport prisoners, watch hospitalized prisoners, serve writs, and locate and apprehend fugitives. Deputies perform some police-type functions. See Bd.'s Final Order at 6. However, Deputies *primary duties* do not fall within the realm of Act 111 police work. *Id.* Rather, Deputies *primary duties* are directly related to the operation of the County courts. *Id.* (citing *ACDSA I; Venneri II*)

As such, the rationale in *Venneri II* still applies. In that case, we recognized Deputies perform various police-type functions, but their primary duties remain court-related. In *Venneri II,* we stated, with emphasis added:

It is obvious that the existing sheriff in Allegheny County operates his office in a manner different from prior Allegheny County sheriffs. Clearly, he views the operation of his office more as a police department. This can, perhaps, be attributed to his vast police experience. This record would support a conclusion that [Sheriff] and his deputies have done an outstanding job for the people of Allegheny County. *However, the existing sheriff's views and intentions cannot control the law with respect to whether his deputies are in fact policemen. It is very possible that the next duly elected sheriff may choose to restrict his office and deputies only to court functions. In such event could [deputy sheriffs] argue they are still policemen? To ask the question is to answer it.*

In carefully reading Act 111 and [PERA], the question which the lower court had to answer was whether deputy sheriffs, taking all of the facts into consideration, are "directly involved with and necessary to the courts of this Commonwealth," or more specifically, the courts of Allegheny County as the facts pertain to this case. *We conclude that there was sufficient substantial evidence to permit the court below to determine that the deputy sheriffs of Allegheny County are so directly involved with and necessary to the courts of Allegheny County, that they are not policemen within the intent of Act 111, but would appear to be "court-related" personnel within the intent of [PERA]. Although the duties described in portions of the record could be characterized as being the same as police duties, in reality those duties are incidental to the primary responsibilities of the sheriff. Clearly, the sheriff's primary responsibility is to the courts.*

316 A.2d at 126–27 (footnote omitted).

Similarly, in *ACDSA I,* we stated, with emphasis added:

We must determine whether any changes have occurred since our decision in [*Venneri II*], which would alter our conclusion there that the deputy sheriffs are not policemen for purposes of Act 111. *In [Venneri II], we held that, although the deputy sheriff's duties encompassed many activities normally performed by police, their primary duties were directly related to the operation of the Allegheny County courts. Id.*

*The sheriff's office has continued to perform the same police-type functions.* These include plainclothes investigatory work; patrol of the County's public transit system; replacing absent police officers to augment the police force; and providing security for V.I.P.'s in Allegheny County. *However, the record also indicates that the deputy sheriffs have maintained their traditional status as an arm of the Allegheny County judicial system, implementing various court-related processes.*

Since [*Venneri II*], the only other duties have involved the institution of public safety programs, undercover work with a drug enforcement task force connected with the Federal Drug Enforcement Administration for approximately four years and undercover work with a related homicide investigation unit. We hold that these new responsibilities are not sufficient in either quality or quantity to justify a conclusion that the deputy sheriffs' status rises to the level of police under Act 111.

504 A.2d at 438–39 (footnotes omitted).

We agree with the Board that Deputies' *primary duties* have not evolved into general police duties since *Venneri II* and *ACDSA I*. Although Deputies continue to perform some police-type functions, these functions are incidental to their predominantly court-related responsibilities. There are no communities in the County where Deputies provide primary police protection. Also, there are no areas in the County where Deputies regularly perform patrol duties. Rather, Deputies, when needed, back up or substitute for municipal police officers. This remains insufficient to grant Deputies Act 111 police officer status.

Thus, Deputies are properly classified under Section 805 of PERA as employees *"directly involved with and necessary to the functioning of the courts of this Commonwealth."* 43 P.S. § 1101.805 (emphasis added). *ACDSA I; Venneri II.*

## C. Conclusion

For the above reasons, we hold 18 Pa. C.S. § 103 and 53 Pa.C.S. § 2162 do not vest Deputies with general police powers and duties in the County. Unlike the enabling legislation at issue in *Hartshorn, Capitol Police* or *Park Rangers,* 18 Pa. C.S. § 103 and 53 Pa.C.S. § 2162 contain no similar clear grant of general police powers; they do not charge Deputies with primary police duties in any jurisdiction. Therefore, Deputies are not legislatively authorized to act as Act 111 police officers. *ACDSA I; Venneri II.* Moreover, Deputies' *primary duties* are court-related and do not fall within the realm of Act 111 police work. Thus, Deputies do not effectively act as Act 111 police officers. *Id.*

For these reasons, we affirm the Board's order dismissing the Association's petition for representation.

Judge McCULLOUGH did not participate in the decision in this case.

### *ORDER*

**AND NOW,** this 28th day of January, 2010, the order of the Pennsylvania Labor Relations Board is **AFFIRMED.**