41 A.3d 839

**ALLEGHENY COUNTY DEPUTY SHERIFFS' ASSOCIATION, Appellant**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellee.**

Supreme Court of Pennsylvania.

Argued April 12, 2011.

Decided March 26, 2012.

Robert L. McTiernan, Pittsburgh, Michael Henry Wojcik, Allegheny County Law Department, for Intervenor, County of Allegheny.

Joshua Martin Bloom, Pittsburgh, for Allegheny County Deputy Sheriff's Association.

Kevin Francis McCarthy, Allegheny County District Attorney's Office, Pittsburgh, for Appellant Amicus Curiae, Allegheny County District Attorney.

Lisa G. Michel, Allegheny County Sheriff's Office, Pittsburgh, for Appellant Amicus Curiae, William P. Mullen.

Peter Lassi, John Best Neurohr, PA Labor Relations Board, Harrisburg, for Pennsylvania Labor Relations Board.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION

Justice McCAFFERY.

In this case, we consider whether deputy sheriffs of counties of the second class are "police officers" for purposes of collective bargaining under the act commonly known as Act 111.[1] The Commonwealth Court determined that they are not, and, for the reasons stated herein, we vacate and remand.

Appellant, the Allegheny County Deputy Sheriffs' Association (the "Association"), filed a petition with the Pennsylvania Labor Relations Board (the "PLRB") seeking to represent, for collective bargaining purposes under Act 111, deputy sheriffs employed by Allegheny County (the "Deputy Sheriffs"). The Association twice before had attempted to attain this same objective, only to fail before the PLRB and the Commonwealth Court.[2] However, following those decisions, the General Assembly amended the Crimes Code in 1995, and then the Municipal Police Education and Training Law ("MPETL") in 1996, to define deputy sheriffs **in a second-class county** (*i.e.*, the Deputy Sheriffs) as police officers. *See*, respectively, 18 Pa.C.S. § 103; 53 Pa.C.S. § 2162.

Concluding that the aforesaid legislative action was not dispositive of the issue, the PLRB hearing examiner here determined that the Deputy Sheriffs were not "police officers" as contemplated by Act 111 because he found that their

---

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 expressly gives police officers and fire fighters the right of collective bargaining concerning working conditions and the swift and final resolution of disputes by non-appealable arbitration. *See* 43 P.S. § 217.1.

2. *See Venneri v. County of Allegheny,* 12 Pa.Cmwlth. 517, 316 A.2d 120 (1974), and *Allegheny County Deputy Sheriff's Ass'n v. Pa. Labor Relations Bd.,* 95 Pa.Cmwlth. 132, 504 A.2d 437 (1986) (*en banc* ) (*"ACDSA I"*).

primary duties were not those of typical police officers, but rather were those directly related to the operation of the courts. For this reason, the hearing officer concluded that the bargaining rights of the Deputy Sheriffs were governed by Section 805 of the Pennsylvania Public Employe Relations Act ("PERA"), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.805.[3] In coming to his decision, the hearing examiner found insufficient the Association's evidence of numerous police-related activities, in addition to court-related ones, engaged in by the Deputy Sheriffs. Additionally, the hearing officer relied heavily upon *Venneri v. County of Allegheny,* 12 Pa.Cmwlth. 517, 316 A.2d 120 (1974), and *Allegheny County Deputy Sheriff's Ass'n v. Pa. Labor Relations Bd.,* 95 Pa. Cmwlth. 132, 504 A.2d 437 (1986) (en banc) (*"ACDSA I "*). As noted above, these cases denied previous bids by the Deputy Sheriffs to collectively bargain under Act 111.

The hearing examiner filed a proposed order of dismissal, the Association filed exceptions, and the PLRB dismissed them, issuing a written Final Order against the Association. In arriving at its decision, the PLRB made additional factual findings concerning the duties of the Deputy Sheriffs, concluding that, while the Deputy Sheriffs do perform some traditional police duties, their primary duties are rooted in court functions.[4]

3. Section 1101.805 of PERA provides:
 Notwithstanding any other provisions of this act[,] where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in [43 P.S. § 1101.801] has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators[,] whose decision shall be final and binding upon both parties[,] with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.
 43 P.S. § 1101.805 (footnote omitted).

4. The PLRB summarizes its findings of fact, in relevant part, as follows:
 The primary duty of approximately 70–75 deputy sheriffs [of the approximately 150 employed by Allegheny County] is to provide courtroom security for the County's common pleas judges and district magistrates. The primary responsibility of approximately 24–26 dep-

The Association appealed to the Commonwealth Court, which affirmed in a published opinion. *Allegheny County Deputy Sheriffs' Ass'n v. Pa. Labor Relations Bd.*, 990 A.2d 86 (Pa.Cmwlth.2010) ("*ACDSA II*"). The court began by observing that the PERA governs the bargaining rights of all deputy sheriffs as "employees **'directly involved with and necessary to the functioning of the courts of this Commonwealth.'** " *Id.* at 88 (quoting 43 P.S. § 1101.805) (emphasis in Commonwealth Court opinion). The court then observed, as had the PLRB, that a judicially and administratively created test has been established and used to determine whether law enforcement personnel, other than traditional state and local police officers, fall within the ambit of Act 111. This test asks: 1) are the employees legislatively authorized to act as police; and 2) do they effectively act as police. *Id.* at 89 (citing *Narcotics Agents Reg'l Comm. v. Pa. Labor Relations Bd.*, 833 A.2d 314 (Pa.Cmwlth.2003); *Cambria County Deputy Sheriffs Ass'n v. Pa. Labor Relations Bd.*, 799 A.2d 957 (Pa.Cmwlth.2002), et al.).

With respect to the first prong of the test, the court stated that "absent any clear legislation which expressly grants [the Deputy Sheriffs] general police powers in any community, geographic area[,] or jurisdiction, the definitions of 'police

uty sheriffs is to transport prisoners to court proceedings. Seven deputy sheriffs are assigned to hospital duty and watch prisoners taken to the hospital from the County jail pursuant to an order of the common pleas court. Approximately 12 deputy sheriffs serve writs or other process issued by the common pleas court during daylight hours, and two deputy sheriffs serve housing warrants on the evening shift at the court's request. Approximately 16 deputy sheriffs work in the investigation unit of the Sheriff's office and are assigned arrest warrants for fugitives who are subject to the jurisdiction of the court.

. . . .

The Sheriff requires the deputy sheriffs to attend training provided by the Municipal Police Officers' Education and Training Commission (MPOETC). Upon completion of such training, the MPOETC issues certification cards that identify the deputy sheriffs as police officers. The deputy sheriffs carry firearms outside the courthouse, are expected by the Sheriff to exercise their arrest powers, and have made arrests for crimes committed in their presence. However, the vast majority of arrests by deputy sheriffs are made pursuant to court-issued warrants.

PLRB Final Order, entered April 21, 2009, at 2–3.

officer' in 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162 are insufficient to vest [the Deputy Sheriffs] with the legislative authority to act primarily as Act 111 police officers rather than court personnel." *ACDSA II, supra* at 97. With respect to the second prong of the test, the court held that the PLRB correctly found that, although the Deputy Sheriffs "perform some police-type functions, these functions are incidental to their predominantly court-related responsibilities." *Id.* at 99. Accordingly, because the court determined that the Deputy Sheriffs had failed to demonstrate that they could meet the two-pronged test, the court concluded that the PLRB had properly dismissed the Association's petition for Act 111 representation of the Deputy Sheriffs.

 The Association filed a petition for allowance of appeal, which we granted on the following issue:

Whether the Commonwealth Court erred in affirming the PLRB's dismissal of the sheriffs' association's petition to represent deputy sheriffs as police officers under Act 111, when the PLRB disregarded *Hartshorn v. County of Allegheny* [460 Pa. 560], 333 A.2d 914 (Pa.1975), and *Commonwealth v. PLRB* [502 Pa. 7], 463 A.2d 409 (Pa.1983).

*Allegheny County Deputy Sheriffs' Ass'n v. Pa. Labor Relations Bd.,* 606 Pa. 506, 1 A.3d 867 (2010) (*per curiam* ).

 Our review of a decision by the PLRB is limited to determining whether there has been a violation of constitutional rights, an error of law, a procedural irregularity, or whether the findings of the PLRB are supported by substantial evidence. *Borough of Ellwood City v. Pa. Labor Relations Bd.,* 606 Pa. 356, 998 A.2d 589, 594 (2010). The PLRB's decision must be upheld if its factual findings are supported by substantial evidence, and if the conclusions of law drawn from those facts are reasonable. *Id.* Further, the PLRB's interpretation of a governing statute is to be given controlling weight unless clearly erroneous. *Id.* Because we conclude that the PLRB's decision here constitutes an error of law, we reverse.

Contrary to the conclusions of the Commonwealth Court and the PLRB, the controlling factor in this case is that the

General Assembly, in two separate pieces of legislation, specifically singled out for definition as police officers, deputy sheriffs of counties of the second class. No other deputy sheriffs in this Commonwealth have been so defined by the General Assembly. Indeed, the general definition of "police officer" in the Crimes Code does not simply include the Deputy Sheriffs; rather, "deputy sheriffs of a county of the second class who have successfully completed" MPETL training are the **only** law enforcement personnel mentioned as being included in the definition of "police officer." 18 Pa.C.S. § 103. Based on these circumstances and our holdings in the analogous cases of *Hartshorn v. County of Allegheny,* 460 Pa. 560, 333 A.2d 914 (1975), and *Commonwealth v. Pa. Labor Relations Bd.,* 502 Pa. 7, 463 A.2d 409 (1983) (*"Capitol Police"*), we now hold that deputy sheriffs of counties of the second class are police officers for purposes of Act 111.

While Act 111 does not define "police" or "police officer," neither does PERA single out deputy sheriffs of counties of the second class as "employees" subject to its provisions; rather, PERA simply defines "employee" as "any individual employed by a public employer" **except** for certain categories of public employees including those "covered under" Act 111. 43 P.S. § 1101.301(2).

We have held on two prior occasions that certain nontraditional "police-officer" law enforcement personnel fall under Act 111's reach because of their legislative definition as police officers in statutes unrelated to Act 111. In *Hartshorn, supra,* this Court held that Section 1440(b) of the Second Class County Code "makes clear that the legislature intended county detectives to be classified as policemen" for purposes of Act 111 bargaining rights: "[s]ince 16 P.S. § 4440(b) establishes that [the county detectives] are policemen, their right to collective bargaining is then clear under Act 111." *Hartshorn, supra* at 915–16.

Section 1440(b) simply provides:

(b) County detectives shall at all times be subject to the orders of the district attorney, and shall investigate and

make report to the district attorney as to the conduct in office of magistrates, constables, deputy constables and other officers connected with the administration of criminal justice, to make investigations, and endeavor to obtain such evidence as may be required by the district attorney in any criminal case, and perform such other duties as the district attorney may direct. **Said detectives shall be general police officers and shall have all powers now conferred on constables by existing laws of this Commonwealth, so far as they relate to crime or criminal procedure, and they shall serve subpoenas in cases in which the Commonwealth is a party in a court of record.**

16 P.S. § 4440(b) (emphasis added). Neither 16 P.S. § 4440(b) nor the Second Class County Code generally makes mention of Act 111.

In *Capitol Police, supra,* we held that the Capitol Police are legislatively vested with Act 111 police powers under Section 646 of the Administrative Code, which provides in pertinent part:

§ 646 **Capitol Police, Commonwealth Property Police and Campus Police**

The Capitol Police ... shall have the power, and their duty shall be: (a) To enforce good order in State buildings and on State grounds ...; (b) To protect the property of the Commonwealth in State grounds and buildings ...; (c) To exclude all disorderly persons from the premises ...; (d) In the performance of their duties to adopt whatever means may be necessary; (e) **To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, municipalities in Dauphin County wherein State buildings are located** ...; ... (g) To order off said grounds and out of said buildings all vagrants, loafers, trespassers, and persons under the influence of liquor, and, if necessary, remove them by force, and, in case of resistance, carry such offenders before an alderman, justice of the peace or magistrate[;] and (h) To arrest any person who shall damage, mutilate or destroy the

trees, plants, shrubbery, turf, grass-plots, benches, buildings or structures, or commit any other offense within State buildings....

71 P.S. § 646 (emphasis added).

More specifically, in *Capitol Police*, we reversed the Commonwealth Court's determination that the Capitol Police serving in Scranton may not be considered police officers for purposes of Act 111, holding that Section 646 of the Administrative Code makes clear that "Capitol Police serving in Scranton are empowered as are Scranton Police and police generally throughout the Commonwealth." *Capitol Police, supra* at 413.[5]

In the instant case, deputy sheriffs of counties of the second class have been specifically designated by the General Assembly as police officers in the Crimes Code and the MPETL. *See,* respectively, 18 Pa.C.S. § 103, and 53 Pa.C.S. § 2162.[6] The Commonwealth Court did not consider such designations sufficient for Act 111 purposes because they lack further explanatory language or the grant of specific powers that the Commonwealth Court concluded was evident in the Second Class County Code and the Administrative Code regarding, respectively, second-class county detectives and the Capitol Police. *See ACDSA II, supra* at 95–97.

Contrary to the Commonwealth Court's analysis, when the legislature designates a specific class of law enforcement personnel as "police officers," it is not then required to add the words, "which means that these individuals are hereby legislatively authorized to be or act as police officers" in order for its meaning to be made clear. Further, we disagree with the Commonwealth Court's assertion that Section 1440(b) of the Second Class County Code adds meaningful illumination to its designation of second-class county detectives as police

5. We affirmed the Commonwealth Court's decision that approved the "police" status of Capitol Police serving in Pittsburgh, Philadelphia, and Harrisburg for purposes of Act 111. *Commonwealth v. Pa. Labor Relations Bd.,* 502 Pa. 7, 463 A.2d 409, 413 (1983) ("*Capitol Police* ").

6. The MPETL also defines the Capitol Police as police officers. *See* 53 Pa.C.S. § 2162.

officers when it states: "Said detectives shall be general police officers and shall have all powers now conferred on constables by existing laws of this Commonwealth, so far as they relate to crime or criminal procedure." 16 P.S. § 4440(b). The same may be said of the language describing the Capitol Police, to wit, as law enforcement personnel who may "exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, [and] municipalities in Dauphin County." 71 P.S. § 646. Essentially, these statutory provisions, which we used to determine inclusion under Act 111, merely note that certain law enforcement personnel are, or may act, as police officers. The additional verbiage in these statutes, which the Commonwealth Court concluded was determinative in differentiating these statutes from 18 Pa.C.S. § 103 and 53 Pa.C.S. § 2162, adds little or nothing of any practical nature to the essential definition of these law enforcement personnel as "police officers." [7]

Moreover, we note the significance of the MPETL definition of "police department" as including:

(1) A public agency of a political subdivision having general police powers and charged with making arrests in connection with the enforcement of the criminal or traffic laws. **This paragraph includes the sheriff's office in a county of the second class.**

53 Pa.C.S. § 2162 (emphasis added).

The MPETL's definition of "police department" goes on to identify five other law enforcement organizations, listing the Capitol Police at subparagraph 4. Unmistakably, however, the General Assembly chose to give "the sheriff's office in a

---

**7.** Further, in *Capitol Police*, we explained that the duties of the Capitol Police as "guards" and "police officers" were "not mutually exclusive and there is necessarily an overlapping of functions." *Id.* at 411. As we stated, "[W]e are not persuaded that the status of the Capitol Police as 'police' is to depend upon frequency of [police-related] acts.... In the event of need, [the Capitol Police] possess the ability, capacity and authority to interpose in any situation requiring police intervention." *Id.* at 412. The same analysis applies with respect to the Deputy Sheriffs.

county of the second class" the same primacy as municipal police departments by placing them both in the same first subparagraph. From the specificity of this definition, the legislature's view of deputy sheriffs of counties of the second class as police officers substantially on a par with traditional municipal police could not be made more plain. Significantly, as the PLRB found, the Deputy Sheriffs are also required to be trained to be police officers pursuant to the MPETL. *See* 53 Pa.C.S. § 2167 (requiring the training of police officers and all members of police departments, as defined by the MPETL). Therefore, this case is not distinguishable, in any significant manner, from our prior determinations that Act 111 applied to certain law enforcement personnel based on the language of the relevant statutory scheme governing those specific employees. *See Hartshorn, supra; Capitol Police, supra.*

Our inquiry with respect to the question accepted for review ends with the recognition that the General Assembly expressly defined—and thus authorized—deputy sheriffs of counties of the second class to be police officers.[8] The pains the legislature took to specifically single out these particular law enforcement personnel, together with our holdings in *Hartshorn* and *Capitol Police*, lead to the conclusion that deputy sheriffs of counties of the second class are police officers falling under Act 111. Thus, the PLRB's and Commonwealth Court's application of a judicially and administratively created test to examine whether the Deputy Sheriffs are police officers, after

8. Intervening in the proceedings below, Allegheny County argued that it would be unconstitutional for the Deputy Sheriffs to be afforded Act 111 police officer status, citing Article III, Section 31 and Article III, Section 32(1) of the Pennsylvania Constitution. Because the Commonwealth Court determined that its disposition of the Association's appeal obviated any need to address the County's constitutional concerns, it did not review the County's arguments. *Allegheny County Deputy Sheriffs' Ass'n v. Pa. Labor Relations Bd.*, 990 A.2d 86, 95 n. 12 (Pa.Cmwlth.2010). Because these constitutional claims were not addressed below and, moreover, appear to fall beyond the scope of the question accepted for review, we decline to address them here and remand the matter to the Commonwealth Court. *See Warehime v. Warehime*, 563 Pa. 400, 761 A.2d 1138, 1142 n. 4 (2000).

they have been defined as such by the General Assembly, was erroneous.[9]

For the above reasons, the order of the Commonwealth Court is vacated, and this matter is remanded to that court for proceedings consistent with this opinion.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justices SAYLOR, BAER, and TODD join the opinion.

Chief Justice CASTILLE files a dissenting opinion.

Justice EAKIN files a dissenting opinion.

Chief Justice CASTILLE, dissenting.

I respectfully dissent. I would affirm the Commonwealth Court's holding that deputy sheriffs of second class counties are not "policemen" for purposes of collective bargaining under Act 111 of 1968, 43 P.S. §§ 217.1–217.10 ("Act 111"), but are instead employees covered by the Pennsylvania Public Employe Relations Act (the "PERA").[1]

As the majority concedes, our review of this appeal arising out of a decision by the Pennsylvania Labor Relations Board (the "PLRB") is limited to determining whether there has been a violation of constitutional rights, an error of law, a procedural irregularity, or whether the findings of the PLRB are supported by substantial evidence. Majority Opinion at

9. We additionally note that nothing in Section 805 of PERA, 43 P.S. § 1101.805, relied upon in part by the Commonwealth Court, compels, or even suggests, a different result. That section merely references the procedure to be followed when representatives of employees "directly involved with and necessary to the functioning of the courts" (among other PERA employees) have reached a bargaining impasse. This section does not provide that deputy sheriffs of counties of the second class must be represented by such unit representatives. Again, PERA defines employees as any public employee except for certain defined employees, specifically including those covered under Act 111. 43 P.S. § 1101.301(2).

1. Act 195 of 1970, 43 P.S. §§ 1101.101–1101.2301. Section 805 of the PERA provides that when "units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation," the impasse shall be submitted to arbitration. 43 P.S. § 1101.805.

131, 41 A.3d at 843 (citing *Borough of Ellwood City v. Pa. Labor Relations Bd.*, 606 Pa. 356, 998 A.2d 589, 594 (2010)). A reviewing court must uphold the PLRB's decision if its factual findings are supported by substantial evidence, and if the conclusions of law drawn from those facts are reasonable. *Ellwood City, supra; Commonwealth v. Pa. Labor Relations Bd.*, 502 Pa. 7, 463 A.2d 409, 411 (1983) (*"Capitol Police "*). The court must give controlling weight to the PLRB's interpretation of a governing statute unless it is clearly erroneous. *Ellwood City*, 998 A.2d at 594.

The PLRB asserts that, like the courts, it uses a two-part test for determining what employees are considered "policemen" for purposes of collective bargaining under Act 111: whether 1) they are legislatively authorized to act as police; and 2) they "in fact effectively act as police." Appellee's Brief at 14. Although the sheriffs do perform some police-type duties, according to the PLRB, their work remains primarily court-related.[2] Since the examiner's findings were supported by the evidence presented, the PLRB contends that its decision that the deputy sheriffs are not Act 111 policemen was correct.[3] My review reveals that the PLRB's interpretation of the relevant statutes was not clearly erroneous, and its find-

2. The PLRB found that the "primary duty of approximately 70–75 deputy sheriffs is to provide courtroom security for the County's common pleas judges and district magistrates. The primary responsibility of approximately 24–26 deputy sheriffs is to transport prisoners to court proceedings. Seven deputy sheriffs are assigned to hospital duty and watch prisoners taken to the hospital from the County jail pursuant to an order of the common pleas court. Approximately 12 deputy sheriffs serve writs or other process issued by the common pleas court during daylight hours, and two deputy sheriffs serve housing warrants on the evening shift at the court's request. Approximately 16 deputy sheriffs work in the investigation unit of the Sheriff's office and are assigned arrest warrants for fugitives who are subject to the jurisdiction of the court." Appellees' Brief at 9 (citations omitted). *See also* Majority Opinion at 129–30 n. 4, 41 A.3d at 841–42 n. 4.

3. The PLRB notes that this is the "third time that the Allegheny County deputy sheriffs have sought a determination that they are police officers under Act 111," and that there has been no change in circumstances to justify a different result this time. Appellee's Brief at 4–6 (citing *Venneri v. County of Allegheny*, 12 Pa.Cmwlth. 517, 316 A.2d 120 (1974) and *Allegheny County Deputy Sheriff's Ass'n v. Pa. Labor Relations Bd.*, 95 Pa.Cmwlth. 132, 504 A.2d 437 (1986)). The primary duties of the

ings were supported by the evidence. I would therefore reject the arguments of the Allegheny County Deputy Sheriffs' Association (the "Association") to the contrary.

The question of whether deputy sheriffs in counties of the second class are "police officers" for purposes of collective bargaining under Act 111, or are instead employees covered by the arbitration provisions of the PERA, is ultimately a question of legislative intent, and there is no statutory provision that plainly expresses this intention. The Majority gleans its conclusion instead from what amounts to vague, indirect or circumstantial evidence of legislative intent, based on definitions in the Crimes Code, and the Municipal Police Education and Training Law ("MPETL").[4] The Majority concludes that public employees who perform some police or police-like duties, and who are identified as "police officers" in unrelated statutes, have been granted the same collective bargaining rights as the "policemen" expressly referred to in Act 111—*i.e.*, that the term "police officers" always carries a specialized meaning, with collateral collective bargaining trappings, regardless of the statutory or factual context.

Our prior determinations that Act 111 applied to certain employees derived from the language of the relevant statutory

deputy sheriffs are still "directly related to the operation of the Allegheny County Court of Common Pleas," and the primary duty of most deputy sheriffs is to provide courtroom security for judges and magistrates, transport prisoners to court, and serve writs or other process. *Id.* at 8–9. "Nearly all of the investigative work performed by the deputy sheriffs is directed at apprehending fugitives who are already subject to the jurisdiction of the courts." *Id.* at 9–10. According to the PLRB, there are no communities in Allegheny County where the deputy sheriffs provide primary police protection; instead, at most, they "back up" or substitute for municipal police officers. *Id.* at 11.

4. Section 103 of the Crimes Code defines "police officer" as including "deputy sheriffs of a county of the second class who have successfully completed the requirements under [the MPETL]." 18 Pa.C.S. § 103. The MPETL, in relevant part, defines "police department" as: "(1) A public agency of a political subdivision having general police powers and charged with making arrests in connection with the enforcement of the criminal or traffic laws. This paragraph includes the sheriff's office in a county of the second class." 53 Pa.C.S. § 2162. Section 2162 also defines "police officer," in relevant part, as a "deputy sheriff of a county of the second class." *Id.*

scheme governing those specific employees, which conferred policing powers, and not from external or circumstantial sources for the conclusion. *See, e.g., Hartshorn v. County of Allegheny,* 460 Pa. 560, 333 A.2d 914 (1975) (statutory language provides that "[county] detectives shall be general police officers"); *Capitol Police, supra* (statutory language provides that Capitol police may "exercise the same powers" within their jurisdiction as police in Harrisburg, Pittsburgh and Philadelphia). The Majority insists that these cases are analogous here, but I respectfully cannot agree.

We have held that the legislative grant of policing powers is of substantial concern in considering the status of employees for purposes of determining the applicability of Act 111. *Capitol Police,* 463 A.2d at 413. The statutes describing the powers of the Capitol Police, for example, made it clear that they have "full police powers and duties confined jurisdictionally to property of the Commonwealth, a geographical limitation not unlike special police forces in other governmental or principality jurisdictions." *Id.* at 412 (citing 71 P.S. § 646, which authorizes Capitol police, *inter alia,* to "exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia . . . ").

Similarly, the Allegheny County detectives seeking Act 111 coverage in *Hartshorn* were deemed entitled to such coverage on the basis of express statutory language which specified that those "detectives shall be general police officers." 16 P.S. § 4440(b). This Court held that the statute established that the county detectives "are policemen, [and] their right to collective bargaining is then clear under Act 111. . . ." 333 A.2d at 915–16. *See also Commonwealth v. Pa. Labor Relations Bd.,* 125 Pa.Cmwlth. 549, 558 A.2d 581 (1989) (*"Park Rangers"*) (Legislature specifically vested state park officers with broad police powers within their jurisdiction, and Act 111 applies to them). As the Commonwealth Court correctly concluded in the instant case, absent similar specific legislative direction regarding deputy sheriffs, either throughout the Commonwealth or in second class counties specifically, we

should not presume that the General Assembly has intended that they be deemed police officers for purposes of Act 111, merely because they receive police officer training and certification under the MPETL, or are defined as "police officers" in an unrelated criminal statute. *Allegheny County Deputy Sheriffs' Ass'n v. Pa. Labor Relations Bd.*, 990 A.2d 86, 97 (Pa.Cmwlth.2010).

Along these same lines, this Court determined that sheriffs, "while performing vital and necessary duties in the Commonwealth, are not 'investigative or law enforcement officers'" under the Wiretapping and Electronic Surveillance Control Act ("Wiretapping Act"), 18 Pa.C.S. §§ 5701–82. *Kopko v. Miller*, 586 Pa. 170, 892 A.2d 766, 767 (2006). Our decision in *Kopko* was based on the language of the Wiretapping Act, which grants authority to an "investigative or law enforcement officer" who is "empowered by law to conduct investigations of or to make arrests for" certain predicate offenses listed in the Act, and who is "a member of the Pennsylvania State Police or an individual employed as a police officer who holds a current certificate under 53 Pa.C.S. Ch. 21 Subch. D (relating to municipal police education and training)." *Id.* at 768, 780 (quoting from 18 Pa.C.S. §§ 5702 & 5704(16)(iii)). We concluded that the sheriffs were not "investigative and law enforcement officers" under the Wiretapping Act, despite the fact that two of the sheriffs had in fact completed training under the MPETL. None of the sheriffs in *Kopko* were employed as "police officers" pursuant to the MPETL. *Id.* at 768 & n. 2. Although we acknowledged that the "role of sheriffs in the Commonwealth commands our utmost respect," and it certainly does, we could not ignore the terms of the Wiretapping Act and determined that it "is incumbent on the legislature to specify that the Sheriffs are encompassed within the definition of 'investigative or law enforcement officers,' in order to reach a different conclusion." *Id.* at 770.

I am well aware of the essential law enforcement role played by the dedicated employees of the sheriff's office in Allegheny County. But, I would not blithely set aside the General Assembly's use of the specific term "policemen" to limit the application of Act 111. The Majority adopts the

Association's reasoning that deputy sheriffs should be accorded Act 111 coverage by extrapolating from their "police-type" duties and training, and from statutory language in the Crimes Code and the MPETL. In my view, neither basis supports such a result as a matter of the intended scope of Act 111.

I do note the limited value in this appeal of many of our existing cases concerning sheriffs, which did not present questions of labor law but instead arose out of challenges to sheriffs' law enforcement authority. Sheriffs are long-standing officers in this Commonwealth, and, indeed, in Anglo–American history. Sheriffs have performed varied duties over the centuries, which have included law enforcement functions, and we have respected that history in construing challenges to their residual authority.[5] The parties' arguments reflect this dearth of precisely apposite case law by focusing primarily on the various duties that deputies presently execute, and how these duties do or do not functionally make them "police" under Act 111. But, more important in determining which of two labor law statutes—Act 111 or the PERA—governs the employment terms of these particular public employees, is the consideration of the unique role of sheriffs in relation to the functions of the court system.

The sheriff at early common law acted as a "judge" in the modern sense, and we have noted that, as the judiciary developed, "the sheriff's role evolved from that of judge to

5. For example, the PLRB discusses *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), where we considered deputy sheriffs' common law power to make warrantless arrests for breaches of the peace committed in their presence, and determined that they now may exercise that power in the context of Motor Vehicle Code violations. *See also Commonwealth, Dep't of Transp. v. Kline*, 559 Pa. 646, 741 A.2d 1281 (1999) (deputy sheriff who received same training as municipal police officer was authorized to enforce Vehicle Code). But, in my view, the use of the term "police officer" when referring to deputy sheriffs in the context of their duties is not dispositive of the question of what statute governs the employment status of these public employees. *See also Commonwealth v. Dobbins*, 594 Pa. 71, 934 A.2d 1170, 1180 (2007) ("no legal authority whatsoever" supports treating sheriffs as comparable to police officers with regard to conducting independent criminal investigations; sheriffs have only such independent investigatory authority as is expressly authorized by statute).

that of court officer." *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299, 301–02 (1994). Provisions of general application to all sheriffs throughout the Commonwealth give this Court a role in providing rules of practice, procedure, and conduct for sheriffs and their deputies. The Pennsylvania Constitution provides:

> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and *all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace*.... All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

PA. CONST. art. V, § 10(c) (emphasis supplied). According to the Commonwealth's Judicial Code, "[t]he sheriff, either personally or by deputy, shall serve process and execute orders directed to him pursuant to law." 42 Pa.C.S. § 2921. *See also* 42 Pa.C.S. § 102 (sheriffs are officers "enforcing orders" and are included as personnel of the unified judicial system existing under Article V, Section 1 of the Pennsylvania Constitution).[6] Thus, the Commonwealth Court correctly concluded that:

> [s]ubstantial evidence supports the Board's findings that Deputies' *primary duties* remain court-related. Deputies provide courtroom security, transport prisoners, watch hospitalized prisoners, serve writs, and locate and apprehend fugitives. Deputies perform some police-type functions. However, Deputies['] *primary duties* do not fall within the

---

**6.** Sheriffs' duties within the unified judicial system include holding judicial sales, 1 Pa.C.S. § 1991 (sale conducted by officer or person authorized for purpose by some competent tribunal), and collecting proceeds from recognizances taken in open court for distribution by a judge, such as costs of prosecution and apprehension and victim compensation, 53 P.S. § 17088. *See also* 20 Pa.C.S. § 8301 (court of common pleas may authorize sale of personal or real property under Orphans' Court jurisdiction); 21 P.S. §§ 274, 274a, 274b (sheriff's sales in mortgage foreclosure); 42 Pa.C.S. § 4134 (power to take into custody persons fined for contempt until fine paid or discharged); 50 P.S. §§ 4419, 4425 (power to apprehend and return committed persons escaped from mental hospital); 53 P.S. §§ 7282–83, 16040 (sheriff's sale for failure to pay local taxes; delivery of deed).

realm of Act 111 police work. Rather, Deputies['] *primary duties* are directly related to the operation of the County courts.

990 A.2d at 98 (emphasis in original; citations omitted).

In my view, the lower tribunals properly determined that, despite their voluntary execution of certain incidental "police-type" duties, the primary responsibility of deputies in Allegheny County remains to the courts.[7] Simply because the Sheriff's Office assumes police-type activities does not confer upon the office or its personnel the legal determination of "police officer" for collective bargaining purposes. The Majority reaches far afield to so conclude. One does not become a "police officer" by osmosis. As the deputies are public employees "directly involved with and necessary to the functioning of the courts," they are thus governed by the provisions of the PERA. 43 P.S. § 1101.805. I cannot conclude that they are "policemen" for purposes of collective bargaining under Act 111.

Therefore, I respectfully dissent.

Justice EAKIN, dissenting.

I agree with Chief Justice Castille that deputy sheriffs of second class counties are not "policemen" for the purposes of

7. The PLRB's summary, in footnote 2 *supra*, amply demonstrates the record evidence supporting the conclusion that the primary function of deputy sheriffs remains court-related. In addition, Intervenor Allegheny County filed a brief in opposition to the Association's position, and argues that the General Assembly placed deputies within the jurisdiction of the PERA, rather than Act 111, because of the deputies' role in the operation of the courts of the Commonwealth. The County asserts that even the majority of the work done by the deputy sheriffs' investigations unit relates to people who are already subject to warrants, or is otherwise related to the work of the courts. According to the County, classifying the deputies as Act 111 employees "would undermine the independence of the judicial branch" by reducing the court's authority over hiring, firing and supervising these employees. Intervenor's Brief at 10. Moreover, says the County, treating deputy sheriffs of Allegheny County differently from those in other counties would violate equal protection principles established in *DeFazio v. Civil Service Comm'n*, 562 Pa. 431, 756 A.2d 1103, 1106 (2000) ("One particular county officer may not be treated differently from the other similar officers throughout the commonwealth merely because that officer is within a certain class of county.").

Act 111 collective bargaining. *See* 43 P.S. §§ 217.1–217.10. Having reached this conclusion, I see no reason to speak to incorporation of the independently-elected sheriff into our court system; the *de facto* role of the sheriff differs from county to county. The constitutional issues related thereto are considerable, and I would avoid *dicta* that may prove inapplicable down the road.

Therefore, I respectfully dissent.