**ALLEGHENY COUNTY DEPUTY SHERIFFS' ASSOCIATION,**
Petitioner,

v.

**PENNSYLVANIA LABOR RELATIONS BOARD,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued April 17, 2013.
Decided May 2, 2013.

---

Joshua M. Bloom, Pittsburgh, for petitioner.

Robert L. McTiernan, Pittsburgh, for Intervenor County of Allegheny.

BEFORE: PELLEGRINI, President Judge, McGINLEY, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge and BROBSON, Judge.

OPINION BY President Judge PELLEGRINI.

This matter is presently before us on remand from the Pennsylvania Supreme Court. In this case, the Allegheny County Deputy Sheriffs' Association (Union) filed a petition with the Pennsylvania Labor Relations Board (Board) arguing that they are policemen and that they should be considered to be policemen for collective bargaining purposes under the Policemen and Firemen Collective Bargaining Act (Act 111),[1] because deputy sheriffs in coun-

---

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 does not define who are "policemen." Because Act 111 fails to define who is or is not a policeman within its purview, we have previously noted that the Board and the courts have applied a two-part test which requires that the unit of employees in question must be (1) legislatively authorized to act as police, and (2) that the employees in question must, in fact, effectively act as police. *Narcotics Agents Regional Committee v. Pennsylvania Labor Relations Board,* 833 A.2d 314, 317 (Pa.Cmwlth.2003), *appeal denied,* 577 Pa. 729, 847 A.2d 1290 (2004). Giving arbitrators the power to decide basic governmental disputes

ties of the second class are defined as police officers under Section 2162 of the Municipal Police Education and Training Law (MPETL)[2] and Section 103 of the Crimes Code.[3]

The Board found that the Union was certified as the exclusive representative of the deputy sheriffs' collective bargaining unit under Section 805 of the Pennsylvania Public Employe Relations Act (PERA),[4] and that the deputy sheriffs' primary duties related to County's court operations, including providing court security, serving process for the courts, executing warrants for the courts and transporting prisoners for the courts. Relying on the deputy sheriffs' previous attempts to reclassify themselves as Act 111 policemen in *Allegheny County Deputy Sheriffs' Association v. Pennsylvania Labor Relations Board,* 95 Pa.Cmwlth. 132, 504 A.2d 437 (1986) and *Venneri v. County of Allegheny,*

---

had always been considered unconstitutional because arbitrators are private individuals and why should private individuals make governmental decisions when that duty has been entrusted to elected officials. In *Erie Firefighters Local 293 of International Association of Firefighters v. Gardner,* 406 Pa. 395, 396, 178 A.2d 691, 695 (1962), our Supreme Court, interpreting the former Article 3, Section 20 of the Pennsylvania Constitution which prohibited the delegation of governmental functions, held that "the power to fix municipal salaries and to create a pension plan is nondelegable under our Constitution for these matters, as have been mentioned above, are purely municipal functions." In 1967, as set forth in italics, Article 3, Section 31 was amended to allow interest arbitration only for policemen and firemen and their public employers, now providing:

The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatsoever.

*Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action,*

*and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.*

Pa. Const. art. III, § 31. The interpretation of who are policemen or firemen within the meaning of this provision is for the courts to make. However, this issue has not been raised in this case.

2. 53 Pa.C.S. § 2162. Section 2162 defines "police officer," in pertinent part, as "[a] deputy sheriff of a county of the second class." No issue has been raised as to whether Allegheny County is a second class county.

3. 18 Pa.C.S. § 103. Section 103 defines "police officer" in pertinent part as "deputy sheriffs of a county of the second class who have successfully completed the requirements under the [MPETL]."

4. Act of July 23, 1970, PL. 563, *as amended,* 43 P.S. § 1101.805. Section 805 is entitled, "Guards and court personnel; binding arbitration", *and provides as follows:*

Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

12 Pa.Cmwlth. 517, 316 A.2d 120 (1974), the Board found that, even assuming that the Crimes Code and the MPETL authorized the deputy sheriffs to act as police officers, deputy sheriffs in counties of the second class are not police officers within the meaning of Act 111 because they do not effectively act as police officers and they do not perform any additional police-type duties than those that were present in those cases. (Reproduced Record (R.R.) at 318a–320a.)[5]

On appeal, this Court found that the deputy sheriffs are not police officers within the meaning of Act 111 just because they are defined as such under the Crimes Code and the MPETL or that they are legislatively authorized to act with general police powers by those statutes. *Allegheny County Deputy Sheriffs' Association v. Pennsylvania Labor Relations Board*, 990 A.2d 86, 95–97 (Pa.Cmwlth.2010). We did so because the General Assembly did not grant them broad statutory police powers that were present in other statutes and because, in any event, as the Board found, the deputy sheriffs' duties are court related and not the duties of a police officer. *Id.* at 98–99.

On further appeal, the Pennsylvania Supreme Court reversed, holding that the Board and this Court erred in applying the two-pronged test in determining that the deputy sheriffs are not police officers within the purview of Act 111 because they had been specifically defined as such by the General Assembly in the Crimes Code and the MPETL. *Allegheny County Deputy Sheriffs' Association v. Pennsylvania Labor Relations Board*, 615 Pa. 126, 131–36, 41 A.3d 839, 843–45 (2012). As the Supreme Court explained:

In the instant case, deputy sheriffs of counties of the second class have been specifically designated by the General Assembly as police officers in the Crimes Code and the MPETL. *See,* respectively, 18 Pa.C.S. § 103, and 53 Pa.C.S. § 2162. The Commonwealth Court did not consider such designations sufficient for Act 111 purposes because they lack further explanatory language or the grant of specific powers that the Commonwealth Court concluded was evident in the Second Class County Code and the Administrative Code regarding, respectively, [the] second-class county detectives [in *Hartshorn*[6]] and the Capitol Police in [*Capitol Police*[7]].

Contrary to the Commonwealth Court's analysis, when the legislature designates a specific class of law enforcement personnel as "police officers," it is not then required to add the words, "which means that these individuals are hereby legislatively authorized to be or act as police officers" in order for its meaning to be made clear. . . .

\* \* \*

5. Regarding the duties of over 150 deputy sheriffs employed by the County: the primary duty of approximately 70–75 deputy sheriffs is to provide courtroom security for the County's common pleas judges and district magistrates; the primary duty of 24–26 deputy sheriffs is to transport prisoners to court; seven deputy sheriffs are assigned to watch prisoners who are taken to the hospital from the County Jail and must be with them at all times; 12 deputy sheriffs serve writs and other process issued by the common pleas court during daylight hours; two deputy sheriffs served housing warrants at night; and 16 deputy sheriffs work in the investigation unit of the Sheriff's Office and are assigned to arrest warrants for fugitives subject to the jurisdiction of the court. (R.R. at 312a–313a.)

6. *Hartshorn v. County of Allegheny*, 460 Pa. 560, 563–64, 333 A.2d 914, 915–16 (1975).

7. *Commonwealth v. Pennsylvania Labor Relations Board*, 502 Pa. 7, 15–16, 463 A.2d 409, 413 (1983) (*Capitol Police* ).

Our inquiry with respect to the question accepted for review ends with the recognition that the General Assembly expressly defined—and thus authorized—deputy sheriffs of counties of the second class to be police officers. The pains the legislature took to specifically single out these particular law enforcement personnel, together with our holdings in *Hartshorn* and *Capitol Police*, lead to the conclusion that deputy sheriffs of counties of the second class are police officers falling under Act 111. Thus, the [Board]'s and Commonwealth Court's application of a judicially and administratively created test to examine whether the Deputy Sheriffs are police officers, after they have been defined as such by the General Assembly, was erroneous.

*Id.* at 134–37, 41 A.3d at 844–45, 845–46 (footnotes omitted). In essence, our Supreme Court took the second prong out of the two-pronged test that those designated as policemen or firemen had to function as policemen to be considered such under Act 111; all that is required is that the General Assembly has to designate them as such. *Id.*

However, the Supreme Court also acknowledged that this Court had not considered the County's constitutional claims, stating:

Intervening in the proceedings below, Allegheny County argued that it would be unconstitutional for the Deputy Sheriffs to be afforded Act 111 police officer status, citing Article III, Sections 31 and 32(1) [8] of the Pennsylvania Constitution. Because the Commonwealth Court determined that its disposition of the [Union]'s appeal obviated any need to address the County's constitutional concerns, it did not review the County's arguments. Because these constitutional claims were not addressed below and, moreover, appear to fall beyond the scope of the question accepted for review, we decline to address them here and remand the matter to the Commonwealth Court.

*Id.* at 137 n. 8, 41 A.3d at 846 n. 8 (citations omitted). Accordingly, the Supreme Court vacated our prior order and remanded the case for disposition of the foregoing constitutional claims that were raised by the County but not previously addressed by this Court.

In this appeal, citing *DeFazio v. Civil Service Commission of Allegheny County*, 562 Pa. 431, 756 A.2d 1103 (2000), the County argued that extending Act 111 coverage to the terms and conditions of the deputy sheriffs' employment would violate Article 3, Section 32 of the Pennsylvania Constitution.[9]

8. Article 3, Section 32(1) states, in pertinent part, "[t]he General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law ... [r]egulating the affairs of counties...." Pa. Const. art. III, § 32, cl. 1.

9. As the Pennsylvania Supreme Court has explained:

Pennsylvania's proscription against local or special laws is currently found in Article III, Section 32, and was first adopted in the Pennsylvania Constitution of 1874. Like

many constitutional provisions, it was adopted in response to immediate past abuses. The main purpose behind Article III, Section 32 was "to put an end to the flood of privileged legislation for particular localities and for private purposes which was common in 1873." Over the years, the underlying purpose of Article III, Section 32 has been recognized to be analogous to federal principles of equal protection under the law, see U.S. Const. amend. XIV, § 1, and thus, special legislation claims and equal protection claims have been reviewed under the same jurisprudential rubric. The common constitutional principle at the

In *DeFazio*, the Sheriff filed an action to enjoin the County from enforcing Sections 1216 and 1217 of the Second Class County Code [10] that were specifically directed at his office and which required him to abide by certain competitive merit hiring and promotion procedures and limited the political activities of his employees. Article 9, Section 4 of the Pennsylvania Constitution denominates county officers, including the sheriff, and makes no distinction as to their powers providing that the "provisions for county government in this section shall apply to every county except a county which has adopted a home rule charter or an optional form of government." Pa. Const. art. IX, § 4. The trial court declared the legislation unconstitutional under Article 3, Section 32 and issued a permanent injunction. The Attorney General's Office, as intervenor, appealed to the Supreme Court arguing that the classification and disparate treatment in the statute was justified due to the legislative classification of Allegheny County as a second class county and the unique function of the Sheriff's office.

The Supreme Court rejected this assertion, explaining:

> However, the legislation in question goes beyond merely singling out Allegheny County as a class to be treated differently and in essence has effectively created a new sub-classification, that of the sheriffs of second class counties. Plainly such a sub-classification bears no relationship either to the distinction of Allegheny County as a county of the second class or to any unique function of the office of county sheriff.

We find appellant's arguments to the contrary unpersuasive. While the legislature can treat different classes of counties differently, that is not what has occurred here. One particular county officer may not be treated differently from the other similar officers throughout the commonwealth merely because that officer is within a certain class of county. The distinction created by this legislation bears no fair or reasonable relationship to the object of the legislation and bears no relationship to the distinction of Allegheny County as a county of the second class.

Neither does it bear a fair or reasonable relationship to the function of the office of sheriff. There is no rational basis for the sub-classification and different treatment of sheriffs of second class counties either from the sheriffs of all counties or from the other officers of second class counties. This legislation singles out the sheriff of Allegheny County, designating him the only county official in the commonwealth without some discretion in the hiring, termination or promotion of his employees. One particular county officer may not be treated differently from the other officers of that county unless the difference in treatment bears some reasonable relationship to some unique characteristic of that particular office. Here, appellant points to the sheriff's office interaction with the public and the judicial system as features which distinguish it from the other county offices. While to some extent this distinction may exist, it is insufficient to justify different treatment from other offices which have, to varying

---

heart of the special legislation proscription and the equal protection clause is that like persons in like circumstances should be treated similarly by the sovereign.
*Pennsylvania Turnpike Commission v. Commonwealth*, 587 Pa. 347, 363–64, 899 A.2d

1085, 1094 (2006) (citations and footnotes omitted).

10. Act of July 28, 1953, P.L. 723, added by Act of January 27, 1998, P.L. 1, *as amended*, 16 P.S. §§ 4216, 4217.

extents, the same types of interaction, e.g., the county police, the district attorney, and others who must relate to both the public and the courts.

*Id.* at 437–38, 756 A.2d at 1106.

 Likewise, in the instant case, the deputy sheriffs will be improperly singled out for disparate treatment, as a sub-classification for collective bargaining purposes, from all other deputy sheriffs in the Commonwealth based on the provisions in the Crimes Code and the MPETL when the Constitution makes no such distinction and our Supreme Court has prohibited such disparate treatment. *DeFazio* teaches us that the deputy sheriffs may not be treated differently from the other similar deputy sheriffs in the Commonwealth merely because they are within a certain class of county, and the distinction created by this legislation bears no fair or reasonable relationship to the object of the legislation, to the distinction of Allegheny County as a county of the second class, or to the deputy sheriffs' duties. *Id.* at 437–38, 756 A.2d at 1106. The provisions of the Crimes Code and the MPETL that designate the deputy sheriffs as police officers fails to comport with the require-

ments of Article 3, Section 32 of the Pennsylvania Constitution. As a result, deputy sheriffs in counties of the second class are not police officers for whom collective bargaining rights are conferred by Act 111 and, like all other deputy sheriffs in the Commonwealth, their collective bargaining rights are derived from Section 805 of the PERA.[11]

Accordingly, the Board's order is affirmed.

Judges McCULLOUGH and COVEY did not participate in the decision in this case.

## ORDER

AND NOW, this *2nd* day of *May*, 2013, the order of the Pennsylvania Labor Relations Board, dated April 21, 2009, at No. PF–R–08–74–W, is affirmed.

## DISSENTING OPINION BY Judge BROBSON.

The Pennsylvania Supreme Court held "that deputy sheriffs of counties of the second class *are police officers falling under Act 111.*[1]" *Allegheny Cnty. Deputy*

---

**11.** Citing *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978), the County also argued that granting the deputy sheriffs collective bargaining rights under Act 111 would violate Article 3, Section 31 of the Pennsylvania Constitution because it would redistribute the authority away from the Sheriff and the courts to the County Executive and Manager and any award would be binding on the courts regardless of its impact on the courts. However, *Ellenbogen* dealt with the identification of the managerial representative of court employees and the retention of authority to supervise and discharge such employees in light of Section 1620 of the County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1620. *Id.* at 437–38, 388 A.2d at 734–35. This case deals with deputy sheriffs who are appointed by the Sheriff and it is the Sheriff that retains the authority to select, discharge and supervise which is pro-

tected from contractual impairment under Section 1620 without his consent. *Erie County v. Pennsylvania Labor Relations Board*, 908 A.2d 369, 375–76 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 738, 921 A.2d 498 (2007). Such authority cannot be impaired under Act 111 as well. *See Westmoreland County v. Westmoreland County Detectives*, 937 A.2d 618, 622–23 (Pa.Cmwlth.2007)(holding that Act 111 interest arbitrator exceeded his power and jurisdiction in issuing an award requiring just cause for firing and discipline of detectives as it infringed on the district attorney's retained right to control the discharge and supervision of his detectives under Section 1620 of the County Code).

**1.** The Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1 to .10, is commonly referred to as Act 111.

*Sheriffs' Ass'n v. Pa. Labor Relations Bd.*, 615 Pa. 126, 136, 41 A.3d 839, 846 (2012) (emphasis added). The majority, however, concludes that "deputy sheriffs in counties of the second class *are not police officers for whom collective bargaining rights are conferred by Act 111.*" (Maj. Op. at 12 (emphasis added).) Because the majority's holding is inconsistent with the Pennsylvania Supreme Court's decision in this case, I respectfully dissent.

I acknowledge, as the majority does, footnote 8 of the Supreme Court's decision, in which the Supreme Court noted the unresolved argument of Intervenor Allegheny County (County) that "it would be unconstitutional for the Deputy Sheriffs to be afforded Act 111 police officer status." *Allegheny Cnty. Deputy Sheriffs' Ass'n*, 615 Pa. at 137 n. 8, 41 A.3d at 847 n. 8. The Supreme Court chose not to address that argument because we did not address it in our prior opinion and because the Supreme Court did not accept the issue for review. *Id.* The Supreme Court then noted in the same footnote its decision to "remand the matter" to us, *id.*, and further noted in the body of its opinion that "this matter is remanded to [the Commonwealth Court] for proceedings *consistent with this opinion.*" *Id.* at 137, 41 A.3d at 846 (emphasis added).

Respectfully, I do not believe the majority's conclusion that deputy sheriffs of counties of the second class (Deputy Sheriffs) are *not* police officers falling under Act 111 is consistent with the Pennsylvania Supreme Court's opinion holding that they are. This begs the question—for what purpose did the Supreme Court remand this matter to us? I believe that on remand, we have been instructed to evaluate the merit of the County's constitutional arguments in light of the Supreme Court's

decision that Deputy Sheriffs, because they are defined as police officers under Section 2162 of the Municipal Police Education and Training Law (MPETL)[2] and Section 103 of the Crimes Code,[3] benefit from the protections and rights afforded under Act 111.

To be clear, the Pennsylvania Supreme Court held that the General Assembly, by choosing to include Deputy Sheriffs in the statutory definitions of "police officer" in the MPETL and Crimes Code, intended Deputy Sheriffs to be eligible for Act 111 rights and protections like any other police officer in this Commonwealth. *Id.* (noting "[t]he pains the legislature took to specifically single out these particular law enforcement personnel"). It, therefore, is not within our purview to ignore the General Assembly's intent to reach an alternative definition of "police officer" for purposes of Act 111. *See* 1 Pa.C.S. § 1921(a) ("[T]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). The Pennsylvania Labor Relations Board (PLRB) in this matter held that the Deputy Sheriffs are not police officers within the meaning of Act 111 and thus denied the petition of the Allegheny County Deputy Sheriffs' Association (Association) for certification to represent the Deputy Sheriffs as police officers under Act 111. In light of the Pennsylvania Supreme Court's decision, the PLRB's reasoning can no longer be used to justify its decision to deny certification to the Association.

The question now on remand is whether the County has advanced a constitutional argument that would support affirmance of the PLRB's decision to deny certification on alternative grounds. In its brief follow-

**2.** 53 Pa.C.S. § 2162.

**3.** 18 Pa.C.S. § 103.

14

ing remand, the County relies on Article III, Section 32 of the Pennsylvania Constitution,[4] which prohibits the General Assembly from passing special or local laws benefitting particular political subdivisions or classes of persons, over others similarly-situated. *See Pa. Turnpike Comm'n v. Commonwealth,* 587 Pa. 347, 363–64, 899 A.2d 1085, 1094 (2006).

An example of a successful "special law" challenge to legislation is *DeFazio v. Civil Service Commission of Allegheny County,* 562 Pa. 431, 756 A.2d 1103 (2000), which is cited by the majority. In that case, the sheriff of Allegheny County initiated an equity action in the Court of Common Pleas of Allegheny County, challenging the constitutionality of legislation that applied only to the hiring and promotion procedures for and political activities of sheriff's employees only in counties of the second class. The trial court held that such legislation, targeted only at counties of the second class, was unconstitutional because it violated Article III, Section 32 of the Pennsylvania Constitution. Our Supreme Court affirmed: "In this case, [the legislation] bear[s] *no relationship to the status* of Allegheny County's second class classification or to any unique characteristic of the office of sheriff in a second class county." *DeFazio,* 562 Pa. at 438, 756 A.2d at 1106.

*DeFazio* would certainly support an argument that any *legislation* that grants special treatment to the Deputy Sheriffs should be held unconstitutional. But this case is not a *DeFazio*-type challenge to a particular piece (or pieces) of legislation. Unlike the plaintiff in *DeFazio,* the County here does not argue that Act 111 is unconstitutional under Article III, Section 32. Nor does the County contend that we should declare Section 2162 of the MPETL

and Section 103 of the Crimes Code unconstitutional as granting favored treatment to the Deputy Sheriffs over the deputy sheriffs in other counties of the Commonwealth. Indeed, the County deftly avoids a direct attack on the constitutionality of either Act 111 or the sections of the MPETL and Crimes Code that define police officer to include the Deputy Sheriffs. Instead, the County employs the constitutional prescription against local and special laws as a statutory construction device, urging us on remand to construe "police officer" for Act 111 purposes to exclude the Deputy Sheriffs, because to do otherwise would be to afford special status to the Deputy Sheriffs.

If the General Assembly's intent as to the meaning of the term police officer for purposes of Act 111 were still in doubt, the County's resort to the Pennsylvania Constitution to ascertain legislative intent would be appropriate. *See* 1 Pa.C.S. § 1922(3) (providing that in ascertaining legislative intent, courts should presume "[t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth"). Here, however, in light of the Supreme Court's decision in this matter, the meaning of police officer for purposes of Act 111 is no longer in dispute. It *includes* the Deputy Sheriffs. We cannot now, even under the guise of the Pennsylvania Constitution, ascribe a contrary legislative intent.

For purposes, then, of this appeal from the PLRB decision, we are left only to determine whether the Deputy Sheriffs, *who are police officers,* are entitled to the rights and protections afforded under Act 111. Because *all* police officers in this Commonwealth are so entitled, and be-

---

4. I agree with the majority's rejection of the County's constitutional argument based on

Article III, Section 31 of the Pennsylvania Constitution. (Maj. Op. at 12 n.11.)

cause there is nothing unconstitutional about Act 111 in terms of affording police officers (or "policemen," as used in Act 111) those rights and protections,[5] the PLRB erred in not granting the Association's petition for certification. Unless and until the sections of the MPETL and Crimes Code that define police officers as including the Deputy Sheriffs are amended or declared unconstitutional (possibly under Article III, Section 32 of the Pennsylvania Constitution), the Deputy Sheriffs, as police officers, fall within the scope of Act 111.

For these reasons, I would reverse the PLRB's decision and remand with direction that the PLRB grant the Association's petition for certification.

Judge McGINLEY joins in this dissenting opinion.

5. *See* Pa. Const. art. III, § 31; *see also Harney v. Russo*, 435 Pa. 183, 255 A.2d 560 (1969) (holding Act 111 valid under Pennsylvania Constitution).